# Third District Court of Appeal

## State of Florida

Opinion filed May 5, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1411
Lower Tribunal No. 19-167 AP
_____

**City of Miami,**
Petitioner/Cross-Respondent,

vs.

**Miami-Dade County,**
Respondent/Cross-Petitioner.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Appellate Division, Daryl E. Trawick, Lisa S. Walsh and Angélica D. Zayas, Judges.

Victoria Méndez, City Attorney, and John A. Greco, Deputy City Attorney, and Kerri L. McNulty, Senior Appellate Counsel, for petitioner/cross-respondent.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and James Edwin Kirtley, Jr. and Dennis A. Kerbel, Assistant County Attorneys, for respondent/cross-petitioner.

Before FERNANDEZ, C.J., and LOBREE and GORDO JJ.

PER CURIAM.

Denied.

FERNANDEZ, C.J., and LOBREE, J., concur.

GORDO, J. (Dissenting)

If second-tier certiorari review does not lie to cure this procedurally infirm ruling which seizes a Mayor's privilege to exercise his veto power while violating due process—it ought not exist. For the following reasons, I would grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

The City of Miami seeks second-tier certiorari review of a circuit court appellate decision which granted Miami-Dade County's petition for writ of certiorari finding in the first instance the Mayor of the City of Miami engaged in prejudicial ex parte communications and quashing the exercise of his veto, despite finding competent substantial evidence in the record supporting the exercise of his veto.

In 2017, Miami-Dade County initiated an administrative process to rehabilitate the Coconut Grove Playhouse. As the Playhouse was designated a historic site by the City of Miami Historic and Environmental Preservation Board (HEPB), the County was required to obtain a historic preservation permit, known as a certificate of appropriateness, from the HEPB.

In April 2017, the HEPB conditionally approved the County's application for a certificate of appropriateness but required the County to

3

return to the HEPB for final approval before proceeding with the rehabilitation. Two City of Miami residents objected and appealed the HEPB's decision to the Miami City Commission. The City Commission granted the appeal and denied approval of the County's application. The County then filed a petition for writ of certiorari to the circuit court. In December 2018, the circuit court granted the County's petition and quashed the Commission's decision denying the certificate of appropriateness. The HEPB's approval of the County's application for a certificate of appropriateness was reinstated with its original conditions for final approval.

When the County applied for a final certificate of approval, however, it was denied by the HEPB. The County appealed the HEPB's denial to the City Commission, which held a quasi-judicial public hearing in May 2019. At the end of the hearing, the City Commission granted the County's appeal and approved the application. On May 17, 2019, the Mayor of the City of Miami vetoed the City Commission's decision and issued a statement detailing the reasons for his veto. At the next City Commission meeting, the veto was placed before the Commission, but the effort to override the veto failed to obtain the required supermajority vote.

The County filed a petition for writ of certiorari to the circuit court, arguing the Mayor's veto was not based on competent substantial evidence

4

and that its due process rights were violated because the Mayor had engaged in ex parte communications. In support, the County attached five unsolicited emails that were allegedly sent to the Mayor's email address during the ten-day veto period, which the County had obtained through a public records request after the mayoral veto and after the City Commission meetings ended. The City filed a motion to dismiss the petition, arguing the circuit court lacked jurisdiction to review the Mayor's veto as he was merely exercising an executive function. The City separately filed a response to the petition, which argued in part that the circuit court lacked jurisdiction to review any emails purportedly sent to the Mayor as they were not addressed at any of the hearings before the HEPB or the City Commission, and were, therefore, not a part of the record. The City argued the proper remedy for the County to address these emails, under Jennings v. Dade County, 589 So. 2d 1337 (Fla. 3d DCA 1991), was pursuit of a declaratory action to prove, following an evidentiary hearing, that a prejudicial ex parte communication occurred.

The circuit court dismissed the petition, finding the Mayor's veto was not a quasi-judicial action. The County petitioned this Court for second-tier certiorari review. A prior panel of this Court quashed the circuit court's opinion, finding that because the Mayor's veto was inextricably intertwined

5

with the quasi-judicial proceedings, the circuit court had jurisdiction to review the County's petition and, therefore, departed from the essential requirements of the law by dismissing the petition. See Miami-Dade Cnty. v. City of Miami, 315 So. 3d 115, 126 (Fla. 3d DCA 2020). The Court quashed the opinion of the circuit court and remanded for the circuit court to address the County's petition.

On remand, the circuit court quashed the Mayor's veto, finding in the first instance that although the Mayor's exercise of his veto was supported by competent, substantial evidence, the Mayor had engaged in prejudicial ex parte communications during the veto period which violated the County's due process rights. The City subsequently filed a motion for rehearing and clarification, arguing the circuit court misapplied Jennings and could not determine whether a due process violation had occurred absent an evidentiary hearing via a separate lawsuit or providing a hearing to allow the Mayor an opportunity to rebut any presumption of prejudice. The County filed a response, and the circuit court denied the motion. This petition for second-tier certiorari review followed.

## DISCUSSION

It is well established that "a district court should exercise its discretion to grant review only when the lower tribunal has violated a clearly established

6

principle of law resulting in a miscarriage of justice." Custer Med. Center v. United Auto. Ins. Co., 62 So. 3d 1086, 1092 (Fla. 2010) (citing Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 889 (Fla. 2003)). A circuit court's decision departs from the essential requirements of the law where the circuit court fails to afford procedural due process or fails to apply the correct law. See Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 723 (Fla. 2012).

I.     *Violation of Clearly Established Principle of Law*

The circuit court's decision violated fundamental and well-settled principles of appellate practice by reviewing evidence in the first instance that was not included in the record before the lower tribunal. See Rosenberg v. Rosenberg, 511 So. 2d 593, 595 n.3 (Fla. 3d DCA 1987) ("Appellate review is limited to the record as made before the trial court at the time of the entry of a final judgment or orders complained of."); Vichich v. Dep't of Highway Safety & Motor Vehicles, 799 So. 2d 1069, 1073 (Fla. 2d DCA 2001) ("The circuit court in [its appellate capacity] performs a 'review'; it does not sit as a trial court to consider new evidence or make additional findings."). In appeals of administrative decisions "the record shall include only materials furnished to and reviewed by the lower tribunal in advance of the

7

administrative action to be reviewed by the court." Fla. R. App. P. 9.190(c)(1). Further:

> An appeal has never been an evidentiary proceeding; it is a proceeding to review a judgment or order of a lower tribunal based upon the record made before the lower tribunal. An appellate court will not consider evidence that was not presented to the lower tribunal because the function of the appellate court is to determine whether the lower tribunal committed error based on the issues and evidence before it.

Hillsborough Cnty. Bd. of Cnty. Com'rs v. Pub. Employees Relations Com'n, 424 So. 2d 132, 134 (Fla. 1st DCA 1982).

Here, the County's decision to attach the purported emails the circuit court relied on to quash the Mayor's veto to its petition for certiorari clearly violated this principle. The emails were not a part of the record before the City Commission and were never considered during the quasi-judicial proceeding. The County only acquired the emails via a public records request after the Mayor's veto and subsequent City Commission meeting to override the veto occurred. The County contends the ex parte communications are part of the record because they were before the Mayor in advance of his veto decision. The lower tribunal here, however, was the City Commission not the Mayor. Additionally, at no point were the emails authenticated or proven to be seen or received by the Mayor himself. The

8

circuit court thus violated a fundamental principle of appellate practice by considering evidence not presented to the lower tribunal.

The County further argues that because the Mayor was acting as a quasi-judicial decision maker, the emails themselves are de facto proof he improperly engaged in ex parte communications and thus, violated its due process rights.

First, "[t]he failure to apply a controlling legal decision is a classic departure from the essential requirements of the law." State v. Jones, 283 So. 3d 1259, 1266–67 (Fla. 2d DCA 2019). Here, the circuit court failed to apply the correct law because Jennings requires an evidentiary proceeding to enable the Mayor to rebut any presumption of prejudice arising from the presumed ex parte communications, which would ultimately allow the circuit court to determine whether the communication was prejudicial to the County. See Jennings, 589 So. 2d at 1339 ("We hold that upon proof that a quasi-judicial officer received an ex parte contact, a presumption arises . . . that the contact was prejudicial. The aggrieved party will be entitled to a new and complete hearing before the commission unless the defendant proves that the communication was not, in fact, prejudicial.").

Under Jennings, this Court held "the allegation of a prejudicial ex parte communication in a quasi-judicial proceeding . . . will enable a party to

9

maintain an original equitable cause of action to establish its claim." Id. at 1341–42. Here, the circuit court did not require the County to maintain an original cause of action or hold an evidentiary hearing and without hesitation accepted the proffered emails as evidence in the first instance the ex parte communications occurred, determining prejudice existed simply because the emails were sent. This is directly contrary to Jennings, which requires a moving party to prove an ex parte communication occurred and a defending party be given an opportunity for rebuttal before the court makes its ultimate determination of whether the ex parte communication prejudiced the aggrieved party. Id. at 1342 ("Upon such proof [of an ex parte communication], prejudice shall be presumed. The burden will then shift to the respondents to rebut the presumption that prejudice occurred to the claimant. Should the respondents produce enough evidence to dispel the presumption, then it will become the duty of the trial judge to determine the claim in light of all the evidence in the case.").

The plain language of Jennings clearly mandates the presumption of prejudice is rebuttable, NOT, as the circuit court's order renders it, irrefutable. The circuit court only applied Jennings in part, finding the communications were presumed to be prejudicial but ignoring the

10

requirement that a defending party have an opportunity to rebut that presumption.

Second, while receipt of a public records request can be used as proof that a communication was sent, it cannot be used as prima facie evidence that prejudicial ex parte communications occurred where the County did not establish the Mayor himself even opened or responded to the emails.

Third, the circuit court acting in its appellate capacity is bound by the Florida Rules of Appellate Procedure. Fla. R. App. P. 9.010 ("These rules, cited as "Florida Rules of Appellate Procedure" . . . . shall govern all proceedings commenced on or after that date in the supreme court, the district courts of appeal, and the circuit courts in the exercise of the jurisdiction described by rule 9.030(c)."). Florida Rule of Appellate Procedure 9.030(c)(1) provides that "[t]he circuit courts shall review, by appeal: (A) final orders of lower tribunals as provided by general law; (B) nonfinal orders of lower tribunals as provided by general law; and (C) administrative action if provided by general law." Under rule 9.040(c) "[i]f a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought." It was well within the circuit court's jurisdiction acting in its appellate capacity to transfer the case to the circuit trial court for

an evidentiary hearing that complied with <u>Jennings</u> rather than itself engaging in a fact-finding analysis in the first instance.

## II. *Violation of Due Process Resulting in a Miscarriage of Justice*

The circuit court's departure from the essential requirements of law is a miscarriage of justice so "sufficiently egregious," it unmistakably warrants second-tier certiorari review. <u>Nader</u>, 87 So. 3d at 723. The circuit court held the proffered ex parte communications between the Mayor and interested members of the public prejudiced the County and that there was no evidence in the record to rebut the presumption of prejudice. But, as discussed above, the circuit court gave the Mayor no process or opportunity to present any evidence to rebut this presumption.

In <u>Jennings</u>, this Court stated that "[t]he occurrence of [an ex parte communication] in a quasi-judicial proceeding does not mandate automatic reversal." <u>Jennings</u>, 589 So. 2d at 1341. The circuit court's decision operates as an automatic quashal of the Mayor's veto right derived from his elected position and the City's governing charter. The circuit court found the County's due process rights were violated without the requisite record evidence and without affording the Mayor an opportunity to rebut the presumption of prejudice — a clear violation of his due process rights under <u>Jennings</u>. This essentially rendered any established presumption of

12

prejudice to the County irrefutable, as opposed to rebuttable. This is again directly contrary to <u>Jennings</u>.

While "the quality of due process required in a quasi-judicial hearing is not the same as that to which a party to full judicial hearing is entitled," the Mayor was still entitled to an opportunity to be heard. <u>Id.</u> at 1340; <u>see also</u> <u>Keys Citizens for Responsible Gov't, Inc. v. Florida Keys Aqueduct Auth.</u>, 795 So. 2d 940, 948 (Fla. 2001) ("Procedural due process requires both fair notice and a real opportunity to be heard."). Here, depriving the Mayor's due process rights operates as more than a deprivation of an individual's right. When issuing the veto, the Mayor was acting in his official capacity as a representative of his constituents, the people of the City of Miami. Depriving the Mayor of due process as to the exercise of his veto in this instance essentially acts as a deprivation of the due process rights of those he represents.

Additionally, "[a]n important factor to consider when determining whether the circuit court's error amounts to a 'miscarriage of justice' is the adverse precedential effect the error might have on subsequent cases." <u>Dep't of Highway Safety & Motor Vehicles v. Hofer</u>, 5 So. 3d 766, 772 (Fla. 2d DCA 2009) (citing <u>Dep't of Highway Safety & Motor Vehicles v. Alliston</u>, 813 So. 3d 141, 145 (Fla. 2d 2002)). "Where a circuit court's decision fails

13

to apply the correct law and establishes 'principles of general application binding in subsequent cases,' certiorari review is warranted." State, Dep't of Highway Safety & Motor Vehicles, Bureau of Admin. Reviews v. Fernandez, 114 So. 3d 266, 272 (Fla. 3d DCA 2013) (quoting Hofer, 5 So. 3d at 772). If the circuit court's decision remains, quasi-judicial decision makers who are alleged have to received unsolicited ex parte communications for the first time on appeal will have their decisions quashed without any opportunity to demonstrate: (1) actual receipt of the unsolicited communication, and (2) an opportunity to refute the alleged unsolicited communication bore no impact on their decision; even when a court finds the decision was supported by competent substantial evidence.

A "district court's exercise of its discretionary certiorari jurisdiction should 'depend on the court's assessment of the gravity of the error and the adequacy of other relief.'" Custer, 62 So. 3d at 1092 (quoting Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 531 n.14 (Fla. 1995)). The circuit court's seizure of the Mayor's veto power without affording due process is as grave an error as there can be in our democratic system rooted in separation of powers. While second-tier certiorari is extraordinary and discretionary, today the majority brushes under the proverbial rug the wrongs

14

it was specifically designed to correct in an unelaborated denial.  I respectfully dissent.